

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00280-CV

DIOCESE OF LUBBOCK, APPELLANT

V.

JESUS GUERRERO, APPELLEE

On Appeal from the 237th District Court, Lubbock County, Texas
Trial Court No. 2019-534,677, Honorable Les Hatch, Presiding

December 6, 2019

OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

This appeal is a companion case to the petition for writ of mandamus filed by the

Diocese of Lubbock. Our opinion in that cause is styled *In re Diocese of Lubbock*, No.

07-19-00307-CV. We address, now, the appeal perfected by the Diocese of Lubbock

from the order denying its motion to dismiss. The Diocese so moved under § 27.001 of

the Texas Civil Practice and Remedies Code (TCPA).[1] TEX. CIV. PRAC. & REM. CODE ANN.

§ 27.001 *et seq.* (West 2015). We affirm in part and reverse in part.

---

[1] Because Guerrero sued prior to September 1, 2019, the legislative amendments to the TCPA that took effect on September 1, 2019 have no application here. *See City of Port Aransas v. Shodrok*, No. 13-18-00011-CV, 2019 Tex. App. LEXIS 10063, at *2 n.2 (Tex. App.—Corpus Christi Nov. 21, 2019, no pet. h.) (mem. op.) (stating that Chapter 27 of the Civil Practice and Remedies Code, as amended by H.B. 2730, apply only to an action filed on or after the effective date of this Act which was September 1, 2019).

Our opinion in *In re Diocese of Lubbock* describes the general background from which this appeal arose. We see no need to reiterate it and, instead, incorporate the opinion into this one. Suffice it to say that Guerrero sued the Diocese for defamation and intentional infliction of emotional distress after the Diocese published a list entitled "Names of All Clergy with a Credible Allegation of Sexual Abuse of a Minor" (i.e., the List).[2] The list included Guerrero's name. According to the Diocese, his suit is subject to dismissal because the underlying claims fell within the scope of § 27.003(a) of the TCPA. It also contends that the trial court lacked jurisdiction to entertain the cause due to the ecclesiastical abstention doctrine. We addressed the latter issue via our opinion in Cause No. 07-19-00307-CV and again reject the jurisdictional claim for the reasons stated in that opinion. Now we turn to the TCPA and whether it mandated dismissal.

### TCPA

The provisions of the TCPA act like a pendulum; they impose burdens on the parties that swing back and forth. How they swing was described in *Batra v. Covenant Health Sys.,* 562 S.W.3d 696, 706-08 (Tex. App.—Amarillo 2018, pet. denied), and *Castleman v. Internet Money Ltd.*, No. 07-16-00320-CV, 2018 Tex. App. LEXIS 8559, at *5-7 (Tex. App.—Amarillo Oct. 18, 2018, pet. denied) (mem. op.). We apply that pendulum here. Yet, before doing so, it is appropriate to note that the standard of review is *de novo,* and the pleadings, affidavits and other evidence of record are viewed in a light most favorable to the non-movant. *Batra*, 562 S.W.3d at 707-08; *Castleman*, 2018 Tex. App. LEXIS 8559, at *5-6.

---

[2] This list was first published on January 31, 2019, and is not the retraction and clarification published in April of 2019.

*The Diocese's Burden*

The first question is whether the causes of action fall within the ambit of the TCPA. The net cast by the statute encompasses "a legal action . . . based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association."[3] TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). Legal actions within that scope are subject to dismissal, *id.* § 27.005(b), unless the complainant tenders "clear and specific" evidence establishing "a prima facie case" for each element of his claim. *Id.* § 27.005(c). That said, we turn to the pendulum of burdens.

The first burden lies with the movant to show that the action falls within § 27.003(a). *Greer v. Abraham*, 489 S.W.3d 440, 442-43 (Tex. 2016); *Batra*, 562 S.W.3d at 706. That Guerrero sued because the Diocese publicized the List on the internet and through the media is undisputed. Similarly undisputed is that the publication purported to reveal the identity of clergy against whom a "credible" allegation of sexual abuse involving minors was made. This satisfied a prong of the TCPA's definition of "free speech," as we now explain.

The "right of free speech" encompasses a "communication made in connection with a matter of public concern." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). A "communication" includes the "making or submitting of a statement or document in any form or medium." *Id.* § 27.001(1). The List is a statement made by the Diocese and, thus, a communication.

As for the statement involving "a matter of public concern," we note that our Texas Supreme Court held the "'commission of crime'" such a concern. *Brady v. Klentzman*,

---

[3] "Legal action" is a lawsuit, cause of action, petition, complaint, cross-claim, counterclaim, or any other judicial pleading or filing that requests relief. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6) (West 2015).

3

515 S.W.3d 878, 884 (Tex. 2017). Sexually abusing "minors" is a criminal offense.[4] *See, e.g.,* TEX. PENAL CODE ANN. § 21.11(a) (West 2019) (stating that a person commits an offense by engaging in sexual contact with a child younger than seventeen); *id.* § 22.011(a)(2)(A) (stating that a person commits an offense by intentionally or knowingly causing the penetration of the anus or sexual organ of a child); *id.* § 22.011(a)(1)(A), (b)(4) (stating that a person commits an offense by intentionally or knowingly causing the penetration of the anus or sexual organ of another person without the person's consent and it is without the others consent if the actor knew that the person was incapable either of resisting or appraising the act due to a mental disease or defect); *id.* § 22.011(a)(1)(A), (b)(10) (stating that a person commits an offense by intentionally or knowingly causing the penetration of the anus or sexual organ of another person without the person's consent and it is without the other's consent if the actor was a clergyman and exploited the other person's emotional dependency on the clergyman in the clergyman's position as a spiritual adviser). Since the List described potential sexual abuse of minors and that is a criminal offense, it also involved a matter of public concern. *See Crews v. Galvan*, No. 13-19-00110-CV, 2019 Tex. App. LEXIS 8962, at *11 (Tex. App.—Corpus Christi Oct. 10, 2019, no pet.) (mem. op.) (involving statements about a clergyman inducing a seventeen-year-old to engage in sexual conduct). Thus, the Diocese satisfied its initial burden, and the pendulum swung in the direction of Guerrero.

*Guerrero's Burden*

The next burden lies with the complainant, Guerrero, and required him to present "clear and specific evidence" establishing a prima facie case of each element of his claims. *Batra*, 562 S.W.3d at 706-07; *Castleman*, 2018 Tex. App. LEXIS 8559, at *6.

---

[4] The purported definition of "minor" used by the Diocese in deriving the List includes children and adults who "habitually lack the use of reason."

4

The burden is met through tendering the minimum amount of evidence needed to support a rational inference that each element of his claims is true. *Castleman,* 2018 Tex. App. LEXIS 8559, at *7 (quoting *In re Lipsky,* 460 S.W.3d 579, 591 (Tex. 2015) (orig. proceeding)).

*Defamation*

We begin with the claim of defamation. Its elements consist of a false statement published by the defendant with the requisite degree of fault that defames the plaintiff and causes him damage. *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017); *Castleman,* 2018 Tex. App. LEXIS 8559, at *8. Damages need not be proved, though, where the statement is defamatory *per se. Bedford*, 520 S.W.3d at 904; *Castleman*, 2018 Tex. App. LEXIS 8559, at *8.

Guerrero contended that the Diocese falsely defamed him "by publishing his name on a list of alleged child molesters" and confirming those representations through its interviews with the local media. This suggests the presence of a defamation occurring through a series of events. They include not only what was said in the List but also said through a press release and ensuing interviews. As for the List, it was entitled "Names of All Clergy with a Credible Allegation of Sexual Abuse of a Minor." Therein, the Diocese 1) apologized to "all the victims of abuse, especially minors"; 2) iterated that "this list includes the names of priests or deacons against whom a credible allegation has been made since the Diocese . . . was created"; 3) represented that "a priest or deacon's name only appears on the list if the diocese possesses in its files evidence of a credible allegation; and 4) explained that a "'credible allegation'" was "one that, after review of reasonably available, relevant information in consultation with the Diocesan Review

5

Board or other professionals, there is reason to believe is true." As previously mentioned, the document included Guerrero's name and assignments with the Diocese as a deacon.

As for the press release issued by the Diocese, local media were told that the Diocese joined other Texas Catholic Dioceses in "releas[ing] names of clergy who have been credibly accused of sexually abusing a minor." So too did it mention that "[t]he bishops' decision was made in the context of their ongoing work to protect **children from sexual abuse**, and their efforts to promote healing and a restoration of trust in the Catholic Church." (Emphasis added). Media interviews and coverage followed. One broadcast began with the announcement that "four priests . . . and one deacon have credible allegations against them . . . of **sexual abuse against children** . . . according to the Lubbock Diocese." (Emphasis added). Guerrero was mentioned as one of the group. Elsewhere in the broadcast the Diocese's chancellor sought to assure the public that "the church \*is\* **safe for children**." (Emphasis added).

As we said in *In re Diocese of Lubbock,* "[w]hether one is defamed depends on evaluating not only the statement uttered but also its context or surrounding circumstances based upon how a person of ordinary intelligence would perceive it." *In re Diocese of Lubbock*, No. 07-19-00307-CV, slip op. at 14 (Tex. App.—Amarillo Dec. 6, 2019, orig. proceeding) (citing *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 794-95 (Tex. 2019), and *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 439 (Tex. 2017)); *accord In re Lipsky*, 460 S.W.3d at 594 (stating that whether a publication is false and defamatory depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements). That context or those surrounding circumstances may include a series of writings or events. *See Scripps NP Operating, LLC*, 573 S.W.3d at 791 (holding that "[t]he court of appeals could not make a proper

assessment of the alleged defamatory material in this case without looking at the 'surrounding circumstances' encapsulated in this series" of articles).  So, our review is not restricted to simply the List but rather encompasses the List, the related press release from the Diocese, as well as interviews given by church representatives about the List and why it was developed and published.  From that context and those events, we conclude that a person of ordinary prudence would perceive those named in the List as clergy who may have sexually abused children or those under the age of consent.

Admittedly, the List used the term "minor," not "child" or "children."  Yet, neither the List, press release, nor explanations from those representing the Diocese explained what it meant by "minor."[5]  Moreover, our common parlance tends to assign a definition to "minor" based upon age, much like the common understanding of the words "child" and "children."  In reference to human beings, "minors" are commonly understood to be under-age people or those below the age of majority or legal responsibility. *See Minor,* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 791 (11th ed. 2003) (defining minor as "not having reached majority"); *Minor,* BLACK'S LAW DICTIONARY (6th ed. 1990) (defining minor as "[a]n infant or person who is under the age of legal competence").  In the everyday mind, they are those who are too young to legally vote, buy cigarettes, buy alcohol, or consent to sex, for instance.  That common perception of the term generally does not include adults older than 17 or 21 depending upon the law involved.  As for the words, "child" or "children," they not only have a meaning similar to "minor" in our everyday parlance but often are interpreted as describing those of very young age, such as infants, toddlers, and pre-teens.  *See Child,* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 214

---

[5] This definition came several months later.

7

(11th ed. 2003) (defining child as "a young person especially between infancy and youth" and "a person not yet of age").

We find little difficulty in concluding that one who intermixes all those terms while speaking can readily and reasonably lead the listener to believe that the subject being discussed encompasses people under the legal age. Doing such can reasonably lead others to think the speaker is discussing infants, toddlers, pre-teens and even teenagers, not adults. So, the entire context of the conversation initiated by the Diocese about sexual assault upon "minors" by clergy would lead "a person of ordinary intelligence . . . [to] perceive" that those clergy assaulted not adults but kids, youths, and other people under the age of majority. And, the Diocese named Guerrero as one of those clergy against whom there existed a "credible allegation" of abusing "minors."[6]

As for whether the publication was reasonably susceptible to a defamatory meaning, that implicates a question of law. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 631-32 (Tex. 2018). Its answer depends on the tendency of the statement to injure a person's reputation, expose him or her to public hatred, contempt, or ridicule, or impeach the person's honesty, integrity, virtue, or reputation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (West 2017) (defining libel as "a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or that tends

---

[6] We are aware of the Diocese's contention that "the statements made by representatives of the Diocese to the media were not defamatory concerning Guerrero" and "[t]here [was] no indication in any of the evidence concerning the media that either Bishop Coerver or Chancellor Martin specifically discussed Guerrero in any of the interviews." That neither church representative said his name is inconsequential, though, under the facts at bar. The defamed person need not be expressly mentioned so long as he or she is otherwise identifiable. *Scarbrough v. Purser*, No. 03-13-00025-CV, 2016 Tex. App. LEXIS 13863, at *13 (Tex. App.—Austin Dec. 30, 2016, pet. denied) (mem. op.). And, whether the identity is ascertainable, per *Scripps, D Magazine, and Lipsky*, depends upon viewing the entire picture, not simply one corner of it. The entire picture here consists of the List, posting it for public view on the internet, the press release sending the List to the media, conversations about the List and its purpose between church representatives and the media, and the inclusion of Guerrero's name on the List. Together, they made Guerrero's identity as one of the clergy in question identifiable. Just as a mime can identify a wall through his actions, the Diocese and its representatives identified Guerrero through theirs.

8

to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury"). Accusing one of sexually abusing children can reasonably be perceived as having the aforementioned effect; thus, the publication here is reasonably susceptible to a defamatory meaning. And, the purported falsity of the accusation finds evidentiary support in Guerrero's sworn denial about having engaged in such conduct and in the Diocese's later admission that it had no evidence that he sexually assaulted someone under 18 years of age.

That leaves us with the two remaining elements of defamation, which elements are the statement's utterance with the requisite fault and damages. Regarding the latter, authority tells us that falsely accusing one of committing a crime is defamatory *per se*, *Dallas Morning News, Inc.*, 554 S.W.3d at 638, as is accusing one of engaging in serious sexual misconduct. *See, e.g., Miranda v. Byles*, 390 S.W.3d 543, 552 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (holding as defamatory *per se* an accusation about the sexual molestation of a child). The accusation at bar comes within both categories. Not only is it a factual statement subject to objective verification but also an accusation about criminal and serious sexual misconduct. Thus, Guerrero need not prove damages.

As for the requisite fault, the standard is negligence where the plaintiff is a private, as opposed to public, figure. *Bedford*, 520 S.W.3d at 904; *D Magazine Partners, L.P.*, 529 S.W.3d at 440. In what category Guerrero falls is a question of law. *Klentzman v. Brady*, 312 S.W.3d 886, 904 (Tex. App.—Houston [1st Dist.] 2009, no pet.). No one suggests that he was anything other than a private individual when the alleged defamation occurred. Nor does the record contain evidence placing him into the category of a public

9

figure.  *See id.* (defining the two classes of "public figures").  So, our legal conclusion is that he was a private figure at the time, and the negligence standard controls.

Under the standard of negligence, a defendant acts unreasonably if he knew or should have known that the defamatory statement was false.  *D Magazine Partners, L.P.,* 529 S.W.3d at 440.  The record before us contains sufficient evidence to make a prima facie case of the Diocese's negligence in publishing the purportedly false defamation.  We find that evidence in its own invocation of the meaning of "minor."  The List itself used the word "minor" when alluding to a credible allegation of sexual abuse.  And, in so using the word, the Diocese allegedly intended to assign it the definition accorded under canon law, as revealed through the affidavit of the Diocese's bishop.  Again, that definition described a "minor" as "a person who habitually lacks the use of reason."  Arguably, then, a "minor" encompasses not only those under the age of majority but also adults who habitually lack the use of reason.  Knowing this definition, the Diocese nonetheless incorporated the term "children" into its public rhetoric about the List.  Again, one media outlet announced that "according to the Lubbock Diocese," "four priests . . . and one deacon have credible allegations against them . . . of sexual abuse against ***children***." (Emphasis added).  Additionally, a Diocese representative also told the outlet that the church was "safe for ***children.***" (Emphasis added).  So too did the Diocese declare in its January 31st press release that it was working "to protect ***children*** from sexual abuse."  (Emphasis added).  While all "children" may be minors within the canon law's definition of "minor," not all "minors" are children per that same definition.[7]  Yet, the purported "credible allegation" against Guerrero involved an adult around 41 years old.

---

[7] The Diocese does not argue that canon law or other religious tenet also defines "child" or "children" as including certain adults.

Given our earlier discussion about the general public perception of the word "children," the Diocese's multiple references to "children" while discussing the List, and its knowledge that Guerrero's supposed victim was an adult, there is some evidence of record from which a fact-finder could reasonably infer that the Diocese was negligent. There is evidence that the Diocese knew or should have known 1) the difference between "minors" and "children" while referring to "children" and 2) that by speaking about sexual abuse of "children" the public could reasonably perceive the discussion to be about clerics who sexually abuse infants, pre-teens, and those under the age of majority, not adults. Thus, evidence exists of record from which one could reasonably infer that the Diocese publicly portrayed Guerrero has having abused "children" or people under the age of majority.

In short, Guerrero carried his burden imposed by the TCPA. The record contains clear and specific evidence creating a prima facie case on each element of defamation.

*Intentional Infliction of Emotional Distress*

Regarding the claim of intentional infliction of emotional distress, we need not dwell upon it for long. In lieu of our engaging in an extended explanation regarding its components and whether the record contains evidence of each, we simply focus on one elemental aspect of the claim. That aspect is the mens rea. It requires proof that the defendant acted intentionally or recklessly. *Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017). And, to establish it, the plaintiff must proffer evidence illustrating the emotional distress was the intended or primary consequence of the conduct. *Standard Fruit & Veg. Co. v. Johnson*, 985 S.W.2d 62, 67 (Tex. 1998); *accord Fishman v. C.O.D. Capital Corp.*, No. 05-16-00581-CV, 2017 Tex. App. LEXIS 6661, at *14 (Tex. App.—Dallas July 18, 2017, no pet.) (mem. op.) (stating the same); *Vaughn v. Drennon*, 372 S.W.3d 726, 732

(Tex. App.—Tyler 2012, no pet.) (stating the same). That is, recovery is available when the defendant desired or anticipated that the plaintiff would suffer severe emotional distress. *Standard Fruit & Veg. Co.*, 985 S.W.2d at 67. It is not enough that the emotional distress emanates from, is derivative of, or "incidental to the intended or most likely consequence of the" defendant's conduct. *Id.*; *Vaughn*, 372 S.W.3d at 732. In the latter situations, the distress is the consequence of some conduct, it is not the reason for the conduct. And, because it is the consequence of, as opposed to the reason for, the conduct, the claim of intentional infliction of emotional distress is unavailable. As said by our Supreme Court in *Hoffman-La Roche, Inc. v. Zeltwanger,* 144 S.W.3d 438 (Tex. 2004), "[w]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available. *Id.* at 447-48; *see Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 814 (Tex. App.—Austin 2017, pet. granted) (holding that Jones did not establish a prima facie case of intentional infliction of emotional distress because the facts underlying that claim were the same facts upon which he based his claim of defamation); *Bilbrey v. Williams*, No. 02-13-00332-CV, 2015 Tex. App. LEXIS 2359, at *39-40 (Tex. App.—Fort Worth Mar. 12, 2015, no pet.) (mem. op.) (holding the same). Instead, there must be proof that the defendant wanted the plaintiff to suffer or anticipated that he would suffer severe emotional distress. In that situation, the distress in not merely derivative from some other tort; it is the tort's aim.

Here, neither party cited us to any evidence indicating that the Diocese intended for Guerrero to experience emotional distress or anticipated that such distress would be the primary consequence of the alleged defamation. Nor did our own search of the record uncover any. What it did reveal, though, was that the facts underlying the allegation of severe emotional distress were the very same ones forming the basis of Guerrero's

defamation claim. In other words, his alleged distress derived from being defamed. So, like *Bilbrey* and *Warner Bros.*, the record before us lacks prima facie evidence of an element to Guerrero's chose in action sounding in the intentional infliction of emotional distress.

*The Diocese's Defense*

Having found that one of Guerrero's causes of action survives dismissal, we now determine if the Diocese raised some defense or other basis barring recovery. It attempted to do so by asserting the doctrine of ecclesiastical abstention. But, as we explained in our earlier opinion in Cause No. 07-19-00307-CV, the doctrine does not apply to the circumstances at bar.

**Conclusion**

In ordering that the motion to dismiss be denied, the trial court did not address individually the two causes of action Guerrero averred. Nevertheless, we affirm its order to the extent that it retained the claim of defamation but reverse it to the extent that it retained the cause sounding in the intentional infliction of emotional distress. We also dismiss, with prejudice, the latter claim and "remand the case to the trial court for further proceedings consistent with this opinion, including consideration of the defamation . . . claim[] and determination of the attorneys' fees and sanctions that must be awarded under Section 27.009 in connection with the dismissal of the other claim[]." *Warner Bros. Entm't., Inc.* 538 S.W.3d at 818.


Brian Quinn
Chief Justice