Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


## OPINION

No. 04-11-00398-CV

**BEXAR COUNTY APPRAISAL DISTRICT**,
Appellant

v.

Soloman **ABDO**, A.L. Hernden, Frederick Zlotucha,
Itamic, Inc., and George J. Abdo,
Appellees

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-13565
Honorable Martha Tanner, Judge Presiding

Opinion by:  Sandee Bryan Marion, Justice

Sitting:  Sandee Bryan Marion, Justice
Rebecca Simmons, Justice
Marialyn Barnard, Justice

Delivered and Filed:  September 12, 2012

AFFIRMED

This is an appeal from a jury verdict in favor of Solomon Abdo, A.L. Hernden, Frederick

Zlotucha, Itamic, Inc., and George J. Abdo (collectively, "appellees").  The underlying lawsuit

involved an appeal by appellees from the Bexar County Appraisal Review Board's determination

on the appraised value of three separate real property tracts owned by appellees.  After the jury

returned a verdict in favor of appellees, the Bexar Appraisal District ("the District") filed this

appeal. In three issues on appeal, the District asserts the trial court erred in (1) awarding attorney's fees, (2) excluding a non-retained expert, and (3) charging the jury. We affirm.

## PROCEDURAL BACKGROUND

In 2008, the District valued thirty-one different lots of real property owned by appellees, and appellees appealed those valuations first to the Bexar County Appraisal Review Board and then later, in a single lawsuit, to the district court. Eventually, agreed partial judgments were entered on twenty-eight of the properties and those properties were severed from the underlying lawsuit. The three remaining properties and the District's disputed valuation for each are identified as follows:

> The "0082 property"
> Owners: Solomon Abdo, Itamic, Inc., and Frederick Zlotucha
> Account No.: 04711-000-0082
> Property ID: 1087004
> Property Description: CB 4711, P-8B, ABS 528, Bexar County, Texas
> Valued at $1,126,100.00
>
> The "0053 property"
> Owners: Solomon Abdo, George J. Abdo, and A.L. Hernden Property
> Account No.: 04862-000-0053
> Property ID: 1051303
> Property Description: CB 4862, P-5, ABS 637, Bexar County, Texas
> Valued at $1,177,860.00
>
> The "0021 property"
> Owners: Solomon Abdo, George J. Abdo, and A.L. Hernden Property
> Account No.: 04864-000-0021
> Property ID: 1051312
> Property Description: CB 4864, P-2, ABS 266, Bexar County, Texas
> Valued at $126,500.00

The jury returned a verdict finding the 2008 "equal and uniform value" of each property as follows: $648,000.00 for the 0082 property; $364,774.50 for the 0053 property; and $47,225.50 for the 0021 property. The jury also awarded the appellees attorney's fees as

follows: $17,042.35 for the 0082 property; $17,042.35 for the 0053 property; and $3,787.20 for the 0021 property.

## ATTORNEY'S FEES

In its first issue, the District raises three complaints regarding the trial court's award of attorney's fees: (1) the court erred by making three awards instead of one, (2) the court ignored the statutory cap on attorney's fees, and (3) the fees were not segregated as to each property.

### A.      Award of Fees for Each Property

The Texas Tax Code provides that property owners who prevail "in an appeal . . . of a determination of an appraisal review board . . . may be awarded reasonable attorney's fees." TEX. TAX CODE ANN. § 42.29(a) (West Supp. 2011).  The District first argues that because the underlying lawsuit constituted only a single "appeal," appellees are entitled to only a single award of fees for all properties.  Appellees counter that because the valuation of three separate parcels of land was challenged—something that could have been done in three separate lawsuits—they are entitled to three separate awards.

Tax Code section 42.29 authorizes the award of reasonable attorney's fees for each appeal.  *Atascosa Cnty. Appraisal Dist. v. Tymrak*, 858 S.W.2d 335, 336-37 (Tex. 1993). Section 42.29, however, places a cap on those fees by providing that the amount of the award for attorney's fees may not exceed the greater of "(1) $15,000; or (2) 20 percent of the total amount by which the property owner's tax liability is reduced as a result of the appeal."  TEX. TAX CODE § 42.29(a).

The District contends that because the case before this court involves only a single year (2008), there is only a single "appeal."  The District relies on the Texas Supreme Court's opinion in *Tymrak*, in which the court considered whether section 42.29 authorizes the award of

attorney's fees for each tax year's appeal in a property tax case involving multiple (four) year appeals. Appellees attempt to distinguish *Tymrak* by arguing it involved multiple year challenges to only one tract of land.

In *Tymrak*, the trial court determined that each tax year constituted a separate "appeal" under section 42.29 and awarded the taxpayers attorney's fees for four appeals. On appeal to the Texas Supreme Court, the court began its analysis by noting that with the enactment of Chapter 42 of the Tax Code, the Legislature provided a means for "taxpayers to judicially challenge the appraisal of their property for property tax purposes by appealing that particular tax year's appraisal to the trial court." 858 S.W.2d at 336. The court also noted that an "appraisal review board order is issued only after the culmination of the annual administrative process a taxpayer must complete before it may petition a trial court for redress of the overvaluation of its property for that year." *Id.* The court concluded as follows:

> Since a taxpayer's appeal is an appeal of an appraisal review board's order determining the taxpayer's protest of the district's valuation of its property for that particular tax year, . . . and because the Tax Code and the constitution mandate that property shall be appraised at its market value as of January 1 of each tax year, . . . it is clear that an "appeal" concerns the current tax year only. An "appeal" for purposes of section 42.29 concerns only one tax year. The taxpayer must pursue the annual administrative process for each tax year that he wants to appeal to the trial court. Consequently, we conclude that section 42.29 authorizes the award of attorney's fees for each tax year at issue in a multiple-year property tax case.

*Id.*

Although the *Tymrak* court addressed multiple-year challenges, we believe its reasoning is instructive in the circumstances here where the challenge is to a single tax year but for multiple properties. The "appeal" is taken from the appraisal review board's order. *Id.* at 336-37; TEX. TAX CODE § 42.01. The "order" is issued at the end of the annual administrative process for each property valuation. *Tymrak*, 858 S.W.2d at 336. The annual administrative

process begins on January 1 of the tax year, "the date on which taxable property is appraised for purposes of listing the property in the appraisal records." *Id.* The appraisal district gives notice of appraised value to the taxpayer in the first few months of each year. *Id.*; TAX CODE ANN. § 25.19 (West 2008). Following the protest process, the appraisal review board's orders are usually delivered during the late summer and early fall. *Tymrak*, 858 S.W.2d at 336-37. On "appeal," "if the court determines that the appraised value of property according to the appraisal roll exceeds the appraised value required by law, the property owner is entitled to a reduction of the appraised value on the appraisal roll to the appraised value determined by the court." TAX CODE ANN. § 42.25 (West 2008).

"[T]he law imposes a clear burden upon the appealing party to appeal each and every final order separately and distinctly, or waive his appellate right as to that final order. Thus, the appeal of each final order is critical and necessary for the preservation of the right of appeal." *See Atascosa Cnty. Appraisal Dist. v. Tymrak*, 815 S.W.2d 364, 369 (Tex. App.—San Antonio 1991), *aff'd*, 858 S.W.2d 335 (Tex. 1993). "Once a taxpayer has properly preserved his right of appeal of any individual final taxing order, he has likewise preserved his right to attorney's fees in the same appeal, and should not be deprived of his right to attorney's fees simply because the separately appealed final orders have been consolidated for judicial economy." *Id.* We believe the administrative process envisions an appeal of each separate order issued by the appraisal review board for each year on each parcel of property as that property is identified on the appraisal roll. *Id.* ("§ 42.25 provides for a limit on attorney's fees on the greater of $5,000 or 20 percent of the total amount of taxes in dispute per appeal *of each final taxing order*") (emphasis added). Therefore, whether each "appeal" is prosecuted in separate lawsuits or in a single consolidated lawsuit, section 42.29 authorizes the award of attorney's fees for each separate

order appealed from in a multiple-property tax case. We believe such a conclusion is consistent with the supreme court's holding in *Tymrak* because there must be an appeal of each order. Here, the appraisal review board issued a separate order for each property; therefore, we conclude the trial court did not abuse its discretion in awarding attorney's fees for the appeal of each order.

**B. Sufficiency of the Evidence & Statutory Caps**

In this case, the amount of the award for attorney's fees could not exceed the greater of (1) $15,000; or (2) twenty percent of the total amount by which the property owner's tax liability was reduced (the tax savings) as a result of the appeal. *See* TAX CODE § 42.29(a). The District argues that, although the jury was asked to determine the value of the property, the jury was not told how to calculate the tax savings. We presume the District is arguing that with no calculation by the jury of the amount of the tax savings, there is no evidence to support an award of "twenty percent of the total amount by which the property owner's tax liability is reduced as a result of the appeal." Appellees counter that the trial court was free to engage in its own mathematical calculation and simply subtract the jury's value from the District's value, multiply the difference by the tax rate published in the District's notices, and then calculate twenty percent of that savings or reduced liability.

In this case, the jury was asked to determine the "reasonable fee for the necessary services" of appellees' attorney as to each property. The jury was not asked to then calculate the statutory limit on each award. Instead, in its final judgment, the trial court calculated the tax savings, applied the statutory cap, and reduced the jury's awarded amount to the amount of the cap for two of the properties and less than the cap for one of the properties. We believe the trial court not only had the authority, but also had an obligation to calculate the statutory cap on the

jury-awarded fee amount.  *See In re Columbia Med. Ctr. of Las Colinas*, 306 S.W.3d 246, 248 (Tex. 2010) (orig. proceeding) (holding trial court abused its discretion by not reducing punitive damages award in compliance with statutory cap); *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009) (remanding cause to the trial court for it to apply statutory cap to jury's award).

The District also asserts the trial court ignored the statutory caps.  This argument is based on the premise that the cap should be applied to the aggregate of all three awards, as opposed to each separate award.  The parties do not appear to dispute the actual calculated savings amount for each property, which are as follows:

The "0082 property"
District valuation:      $1,126,100.00
Jury valuation:              648,000.50
Valuation savings:         478,100.00
Multiplied by tax rate of  0.02112184
Tax savings:                  $10,098.35


The "0053 property"
District valuation:      $1,177,860.00
Jury valuation:              364,774.50
Valuation savings:         813,085.50
Multiplied by tax rate of  0.02079694
Tax savings:                  $16,909.69

The "0021 property"
District valuation:        $126,500.00
Jury valuation:                47,225.50
Valuation savings:           79,225.50
Multiplied by tax rate of  0.02079694
Tax savings:                   $1,648.67

In its calculation, the District added the three savings amounts for a total of $28,656.71. Twenty percent of this amount equals $5,731.34.  Therefore, according to the District, the maximum appellees could receive was a total amount of $15,000.  The trial court, however, did not aggregate the three tax savings amounts, but instead, treated each property separately and

awarded $10,098.35, $15,000, and $1,648.67 respectively. Thus, for each separate property, the trial court awarded the greater of (1) $15,000; or (2) twenty percent of the total amount by which the property owner's tax liability was reduced as a result of the appeal. *See* TAX CODE § 42.29(a). Because we conclude each property valuation challenge represents a separate appeal, we also conclude the trial court correctly treated each property separately, rather than in the aggregate, when calculating the cap.

## C.    Segregation of Fees

The District complains appellees should have segregated their fees as to each property. By way of example, the District points to a time entry in appellees' exhibit 29 for December 29, 2008 that indicates time was charged on six cases, but does not specify which six cases. The District's chief complaint is that appellees failed to ensure the jury did not award fees for work on cases other than the three that went to trial.

A party seeking an award of attorney's fees must segregate the fees between claims for which they are recoverable and claims for which they are not. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). An exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their "prosecution or defense entails proof or denial of essentially the same facts." *Id.* (citation omitted). "Therefore, when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are 'intertwined to the point of being inseparable,' the party suing for attorney's fees may recover the entire amount covering all claims." *Id.* "This standard does not require more precise proof for attorney's fees than for any other claims or expenses." *Id.* at 314. The court further explained that

> . . . many if not most legal fees in such cases cannot and need not be precisely allocated to one claim or the other. Many of the services involved in

preparing a contract or a DTPA claim for trial must still be incurred if tort claims are appended to it; adding the latter claims does not render the former services unrecoverable. Requests for standard disclosures, proof of background facts, depositions of the primary actors, discovery motions and hearing, voir dire of the jury, and a host of other services may be necessary whether a claim is filed alone or with others. To the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service.

*Id.* at 313–14.

Appellees' attorney testified he charged appellees "out of court" at $200 per hour and "in court" at $250 per hour, and he spent 139 hours on the case for a total of $33,244.16. Although counsel's time records are in evidence, the records do not distinguish between the various properties. Instead, the evidence on how counsel segregated his fees comes from his testimony as follows:

So out of the total for the attorney's fees and the expenses of 600 and some odd dollars, my clients were required to pay me, to carry their case through tomorrow, the total sum of $33,871.90. The allocation between the three tax accounts -- and that's what I must do, because there are really three separate cases that are being presented here today. I have allocated those as follows -- and this is how they're being paid, as well, out of the three separate accounts by the clients -- 45 percent of that is allocated to the [0082 property] and 45 percent is allocated to [the 0053 property]. 10 percent is allocated to the [0021 property].

So if you then follow that through, of the $33,871.90, attributable to the prosecution of the [0082 property], I have incurred and have charged the clients $15,242.35. For the [0053 property], I have charged -- billed and charged the clients $15,242.35. And then for the [0021 property] I have billed and charged the clients $3,387.20. And those three add up to the 33,871.90.

We conclude counsel provided clear testimony that supports the trial court's award of fees. Submitting to the jury an attorney's testimony concerning the percentage of hours relating to specific claims is sufficient to satisfy a party's burden to segregate its attorney's fees. *Id.* at 314 ("an opinion would have sufficed stating that, for example, 95 percent of their drafting time

would have been necessary even if there had been no fraud claim"). Therefore, the trial court did not abuse its discretion in awarding fees as it did relative to each property.

## EXCLUSION OF NON-RETAINED EXPERT

The District designated Diane Bartlett as a non-retained expert, and provided her name, address, telephone number, and the following:

> Ms. Bartlett is neither retained by nor under the control of [the District]. She may be subpoenaed to provide expert testimony about whether the subject property is useable and/or in the floodplain and/or matters associated therewith. The general substance of Ms. Bartlett's mental impressions and opinions and a brief summary of the basis of them are that she is expected to disagree with Martyn Glen's opinions regarding engineering and those of Macina Bose Copeland and Associates, Inc. about what is and what is not useable land and/or what is or is not in the floodplain.

Pretrial, appellees objected to Bartlett's testimony on the grounds that the District did not adequately disclose the opinions she would offer at trial. The trial court overruled the objection. However, at trial, when the District called her as a witness, appellees' counsel took Bartlett on voir dire, and again objected to her testimony on the grounds that she had developed her opinion prior to the "disclosure," but her opinion was not disclosed in the "disclosure." The trial court ruled the disclosure was not proper and excluded her testimony. On appeal, the District asserts the trial court erred because it provided the general substance of Bartlett's mental impressions and opinions and documents reflecting such information. We disagree.

For testifying experts, Texas Rule of Civil Procedure 194.2(f) permits a party to request disclosure of:

> (1) the expert's name, address, and telephone number;
> (2) the subject matter on which the expert will testify;
> (3) the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information; . . . .

TEX. R. CIV. P. 194.2(f).

Appellees do not dispute that Bartlett was not a retained expert or that the District complied with subsections (1) and (2) of Rule 194.2(f). The dispute is whether the District complied with subsection (3) of Rule 194.2(f). The District contends its disclosure was adequate because it disclosed that Bartlett was expected to testify "about what is and what is not useable land and/or what is or is not in the floodplain." Additionally, the District contends it produced the work files of its expert, Arlene Bradley-Fisher, and these files contain pages of an email between Bradley-Fisher and Bartlett, and Bartlett is identified by name in Bradley-Fisher's reports. According to the District, appellees had a duty to review all produced discovery.

The purpose of Rule 194.2(f) is "to give the opposing party sufficient information about the expert's opinions to prepare to cross-examine the expert and to prepare expert rebuttal evidence." *Miller v. Kennedy & Minshew, P.C.*, 142 S.W.3d 325, 348 (Tex. App.—Fort Worth 2003, pet. denied). In *Cirlos v. Gonzalez*, a panel of this court considered whether the trial court erred in excluding a portion of appellant's expert's deposition testimony on the grounds that the designation of the expert did not comply with Rule 194.2(f). No. 04–02–00095, 2002 WL 31423885, at *1 (Tex. App.—San Antonio Oct. 30, 2002, pet. denied) (mem. op., not designated for publication). In that case, appellant argued the trial court erred because she timely identified Dr. Wholey as a testifying expert and directed appellee to Dr. Wholey's medical records for the substance of his opinions. This court held the trial court did not err in excluding the testimony because, although appellant identified Dr. Wholey as a treating physician in her discovery supplement and that he was "non-retained," she did not disclose Dr. Wholey's mental impressions or opinions or attach a brief summary of his impressions or opinions. Instead appellant stated "See medical records provided." *Id.* at *2.

Here, the District's "disclosure" regarding Bartlett only vaguely states Bartlett may testify "about what is and what is not useable land and/or what is or is not in the floodplain" "and/or matters associated therewith." However, the District also points to the email Bartlett sent to Bradley-Fisher. The email, which is dated October 19, 2010, was not tendered with or referenced in Bartlett's "disclosure" and does not identify any specific parcel of land. Instead, the email states only as follows:

> Attached is the GIS exhibit. The acres shown is [sic] the parcel minus the DFIRM floodplain and minus the future floodplain as determined by the DFIRM study. The un-flooded acreage is 7.5 acres. The table on the exhibit has the floodplain buffer of 1.59 acres. That leaves 5.91 acres to develop.

On voir dire, Bartlett stated that in August 2010 she estimated that seven and one-half acres of the "0082 property" were outside the floodplain and buffer area and she informed the District of her opinion in October 2010. The District made its disclosure in November 2010.

The record, therefore, reveals that as of the date the District made its disclosure, the District knew the specifics of Bartlett's opinion but did not disclose the specifics to appellees. The email, which apparently relates to only one of the three properties, was not tendered with the expert designation of Bartlett and the designation did not refer appellees to any documents. We apply an abuse of discretion standard in reviewing a trial court's ruling excluding evidence. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). On this record, we cannot conclude the trial court abused its discretion by excluding Bartlett's testimony.

## CHARGE ERROR

The Tax Code provides that the "district court shall grant relief on the ground that a property is appraised *unequally* if" certain conditions are met. TEX. TAX CODE § 42.26(a) (emphasis added). In its final issue, the District asserts the trial court submitted a charge "that was suffused with error." Specifically, the District takes issue with the fact that the jury charge

asked the jury to decide "the equal and uniform value" of each tract of land instead of asking whether the appraised value was "unequal." The District also contends the jury instruction, which explained when a property is "appraised unequally," confused the jury because no definition or instruction was provided explaining the phrase "equal and uniform." Finally, the District asserts the jury question was an impermissible comment on the weight of the evidence. According to the District, section 42.26 requires a two-step process: first, determine the property was appraised unequally and, second, determine the correct appraised value. The District contends that by asking only about step two, the trial court improperly suggested its own opinion that the property was appraised unequally.

A trial court must submit questions, instructions, and definitions to the jury as are necessary to enable the jury to render a verdict. *See* TEX. R. CIV. P. 278; *see also Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992); *Rosell v. Central West Motor Stages, Inc.*, 89 S.W.3d 643, 653 (Tex. App.—Dallas 2002, pet. denied). We review the trial court's submission of instructions and jury questions under an abuse of discretion standard. *Rosell*, 89 S.W.3d at 653. The trial court has broad discretion in submitting jury questions so long as the questions submitted fairly place the disputed issues before the jury. *Id.* This broad discretion is subject only to the limitation that controlling issues of fact must be submitted to the jury. *Id.* Controlling issues may be submitted to the jury by questions, instructions, definitions, or through a combination thereof. TEX. R. CIV. P. 278; *Rosell*, 89 S.W.3d at 653. When submitting the jury charge, a trial court is afforded more discretion when submitting instructions than when submitting questions. *Wal-Mart Stores, Inc. v. Middleton*, 982 S.W.2d 468, 470 (Tex. App.—San Antonio 1998, pet. denied).

As a general rule, when a statutory cause of action is submitted, the charge should "track the language of the provision as closely as possible." *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994) (jury question omitted element of statutory cause of action). The language may be altered slightly to conform the issue to the evidence presented in the case, but a court should not burden a jury with surplus instructions. *Regal Fin. Co., Ltd. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 601 (Tex. 2010). Here, the Tax Code provides that a "district court shall grant relief on the ground that a property is appraised unequally if"

> (1) the appraisal ratio of the property exceeds by at least 10 percent the median level of appraisal of a reasonable and representative sample of other properties in the appraisal district;
> (2) the appraisal ratio of the property exceeds by at least 10 percent the median level of appraisal of a sample of properties in the appraisal district consisting of a reasonable number of other properties similarly situated to, or of the same general kind or character as, the property subject to the appeal; or
> (3) the appraised value of the property exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted.

TEX. TAX CODE § 42.26(a). Contrary to the District's argument that section 42.26 requires a two-step process, this section requires only one determination: whether at least one of the three conditions in section 42.26(a) is satisfied.[1] If one of those conditions is satisfied, then the property has been "appraised unequally."

In this case, for each of the three properties, the jury was asked "[w]hat do you find to be the equal and uniform value of the property described below . . . ."[2] The phrase "equal and uniform value" was not defined. Instead, the jury was provided with an instruction that quoted subsection (a)(3) of section 42.26: "A property is appraised unequally if the appraised value of

---

[1] For this reason, we do not believe the jury question was submitted in a manner that constituted a comment on the weight of the evidence.

[2] For the same three properties, the jury was also asked "[w]hat do you find to be the market value of the property described below . . . ." On appeal, the District does not complain about the three "market value" questions.

the property exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted." The jury was also instructed as follows: "The appraised value of the subject property or any of the comparable properties to which it has been compared consists of the value reflected on the appraisal roles of [the District] or by an appraisal." Therefore, the essential element of appellees' claim—whether any of the properties were appraised unequally—was included in the instruction. Although the question was not phrased in the negative—"was the appraised value unequal"—the question accompanied by the instruction "fairly placed the disputed issue" before the jury by requiring the jury to determine the "equal and uniform value" in comparison to "comparable properties appropriately adjusted." *Montgomery Cnty. v. Humble Oil & Refining Co.*, 245 S.W.2d 326, 335 (Tex. Civ. App.—Beaumont 1951, writ ref'd n.r.e.) ("The value of the appellee's property and the value of other properties of other taxpayers in the county is a correct standard by which the trial court and reviewing courts might be able to determine whether there has been a violation of the principle of uniformity and equality of taxation and whether this litigant has been injured by such violation."). Thus, the question mirrored the instruction, which, in turn quoted the statute. Therefore, we conclude the trial court properly submitted instructions and questions as necessary to enable the jury to render a verdict.

## CONCLUSION

We overrule the District's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice