

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00151-CV

Tanita F. **KEHOE**, Scott Kehoe, and Thomas David White, Jr.,
Appellants

v.

Edward A. **CLOUSE** and Helen R. Clouse,
Appellees

From the County Court at Law, Kendall County, Texas
Trial Court No. 10-627-CCL
Honorable Bill R. Palmer, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Karen Angelini, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  March 25, 2015

AFFIRMED IN PART; REVERSED IN PART

Appellants Tanita F. Kehoe, Scott Kehoe, and Thomas David White, Jr. sued appellees

Edward A. Clouse and Helen R. Clouse seeking to quiet title to 0.21 acres of land and asserting

declaratory judgment and trespass to try title claims.[1]  The Clouses filed counterclaims asserting

the same claims against the appellants and also asserting a claim against Scott Kehoe for trespass.

A jury found that the prior owners intended to convey the 0.21 acres to the Clouses and also found

---

[1] The appellants also asserted ownership by adverse possession; however, the jury found against them on their adverse possession claim, and they do not raise any issue on appeal regarding that claim.

that Scott Kehoe had trespassed on the Clouses' land. On appeal, the appellants allege the jury charge was erroneous, the evidence is insufficient to support the jury's findings, and the Clouses are not entitled to recover attorney's fees. We reverse the award of attorney's fees and the award of trespass damages, and affirm the remainder of the trial court's judgment.

## BACKGROUND

Henry E. Turley, Louisa R. Turley, Herbert E. Turley, and Margaret P. Turley[2] owned approximately 457 acres of land in Kendall County, Texas before they divided the land and began selling the acreage in parcels. By the 1960's, the Turleys had sold most of the land but still owned approximately 55.87 acres.

In 1964, Herbert and Margaret entered into a contract to sell the Clouses the portion of the Turleys' remaining 55.87 acres that was south of the Upper Cibolo Creek Road. The contract described the land to be sold as "eighteen acres, more or less, and being the south eighteen acres, more or less, and being all the land owned by seller south of Cibolo Road in Kendall County, Texas." Prior to the sale, the property was surveyed, and the survey showed the property as containing 16.9221 acres and established the northern boundary of the property as a fence line, several feet south of the road. The deed signed by the Turleys conveying the property to the Clouses described the northern boundary line as being "[a]long the southerly line of Upper Cibolo County Road and along an old fence" and contained a bearing call for the fence line. The two professional surveyors who testified at trial stated that the Clouses' deed was unambiguous and established the northern boundary of their property as the fence line.

In 1969, the Turleys conveyed what they believed to be the remaining 38.9479 acres of land that they owned to Thomas David White and Ida Faye White, who were the parents of

---

[2] Henry and Louisa were Herbert's parents, and Margaret is Herbert's wife.

appellants Thomas David White, Jr. ("David") and Tanita F. Kehoe. The deed described the southern boundary of the property conveyed to the Whites as being "in a generally Westerly direction crossing Cibolo Road a distance of approximately 500 feet to an iron pin in the center line of said road." The two professional surveyors who testified at trial stated that this call in the Whites' deed was ambiguous.

In 1996, the Whites hired James E. Schwartz, a professional land surveyor, to survey their land because they wanted to convey their land to a trust. During the process of surveying the land, Schwartz discovered that the Clouses' deed and the Whites' deed contained inconsistent calls regarding the location of a common corner. Because the Clouses' deed was senior in time, the call in the Clouses' deed controlled. Schwarz then interpreted the "generally Westerly direction" call for the southern boundary of the Whites' land as being along the centerline of the Upper Cibolo Creek Road. As a result, there was a gap between the centerline of the road which was the southern boundary of the Whites' property and the fence line which was the northern boundary of the Clouses' property. The gap between the centerline of the road and the fence contained 0.21 acres of land and was approximately 250 feet in length and approximately 35-38 feet in width.

The Whites died in 2006, and Tanita and David hired another professional land surveyor, Thomas Pfeiffer, to survey the land the Whites had placed in the trust so that the trust could be dissolved and the land conveyed to Tanita and David. In the process of surveying the land, Pfeiffer also discovered the gap between the two property lines as described in Schwartz's survey and in the Clouses' deed. David informed the Clouses about the gap, and the parties then engaged in a series of actions intended to claim title to the 0.21 acres. Ultimately, the appellants filed the underlying lawsuit in which the Clouses filed counterclaims. The appellants appeal the trial court's judgment entered after the jury made findings in favor of the Clouses.

**BOUNDARY DISPUTE OR CLAIM OF OWNERSHIP**

In their Seventh Amended Original Petition, Tanita and David allege, "This is a boundary dispute." Similarly, in their brief, the Clouses assert, "the trial court properly determined this case was a boundary dispute." Because the law governing boundary disputes is different than the law governing title claims, we must first determine whether the underlying lawsuit was a boundary dispute or a title dispute.

In determining whether a claim involves a boundary dispute or a determination of title to land, we must look to the heart of the controversy. *See Lile v. Smith*, 291 S.W.3d 75, 78 (Tex. App.—Texarkana 2009, no pet.). "The proper test for determining if the case is one of boundary is as follows: If there would have been no case but for the question of boundary, then the case is necessarily a boundary case even though it might involve questions of title." *Plumb v. Stuessy*, 617 S.W.2d 667, 669 (Tex. 1981); *see also Lile*, 291 S.W.3d at 78. A suit involving rival claims to the ownership of a tract of land is not a boundary dispute but a suit to determine title. *Tex. Parks & Wildlife Dept. v. Sawyer Trust*, 354 S.W.3d 384, 389-90 (Tex. 2011); *Conley v. Comstock Oil & Gas, LP*, 356 S.W.3d 755, 760 (Tex. App.—Beaumont 2011, no pet.). Here, the underlying lawsuit involved rival claims to the 0.21 acre tract of land; accordingly, we conclude the underlying lawsuit is a suit to determine title. *See Tex. Parks & Wildlife Dept.*, 354 S.W.3d at 389-90; *Conley*, 356 S.W.3d at 760.

**JURY CHARGE**

In their first, third, fourth, and fifth issues on appeal, the appellants contend the jury charge was erroneous. Specifically, the appellants contend the trial court erred in referring to both the Clouses and the Whites in asking the jury the first question about the Turleys' intent because the Clouses' deed was unambiguous. Similarly, the appellants contend the instructions on ambiguity

and the strip and gore doctrine should have been narrowed to refer only to the conveyance to the Whites.

A.      Standard of Review

We review the trial court's submission of jury questions and instructions under an abuse of discretion standard. *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012); *Bexar Cnty. Appraisal Dist. v. Abdo*, 399 S.W.3d 248, 257-58 (Tex. App.—San Antonio 2012, no pet.). Controlling issues may be submitted to the jury by questions, instructions, definitions, or through a combination thereof. *Abdo*, 399 S.W.3d at 258. The trial court has broad discretion in submitting jury questions so long as the questions submitted fairly place the disputed issues before the jury. *Id.* When submitting the jury charge, a trial court is afforded more discretion when submitting instructions than when submitting questions. *Id.*

B.      Jury Question

The trial court submitted the following question to determine the ownership of the .21 acre tract of land:

Question No. 1:

Who do you find that the [sic] Henry Turley, Louise Turley, Herbert Turley, and Margaret Turley intended to convey the .21 acre of land to?

Answer "yes" to only one.

Thomas David White, Sr. and Ida Faye White: _____

Edward A. Clouse and Helen R. Clouse: _____

The appellants contend that the question was erroneous and that the trial court should have submitted their proposed jury question which was as follows:

Did the sale of land in 1969 to Thomas David White, Sr. and Ida Faye White from Henry Turley, Louse Turley, Herbert Turley and Margaret Turley include the .21 acres at issue in this lawsuit?

The appellants rely on general law regarding ambiguity to support their contention.

A deed may be either ambiguous or unambiguous, and this determination is a question of law. *Hausser v. Cuellar*, 345 S.W.3d 462, 467 (Tex. App.—San Antonio 2011, pet. denied). If after applying the pertinent rules of construction, a deed is subject to two or more reasonable interpretations, then the deed is ambiguous, and a fact issue exists as to the parties' intent. *Id.* The interpretation of an unambiguous deed is a question of law. *Id.*

In this case, the appellants contend that the jury question should only have referred to the conveyance to the Whites because only the Whites' deed was ambiguous. We disagree. Both surveyors agreed that the Whites' deed was ambiguous. They also both agreed that even if the calls in the Whites' deed could be interpreted as including a portion of the 0.21 acre tract of land, the calls in the deed could not be interpreted as encompassing the entire 0.21 acre tract of land. Because a dispute existed as to whether either deed encompassed the 0.21 acre tract of land, one of the disputed issues became the identity of the party to whom the Turleys intended to convey the 0.21 acre tract if the jury determined that neither deed encompassed the 0.21 acre tract. The jury resolved this disputed issue in answering the question submitted in the charge. That disputed issue would not have been resolved by the jury answering the question requested by the appellants. If the jury answered "no" to the requested question, the issue of whether the 0.21 acre tract had been conveyed to the Clouses would not have been resolved. Accordingly, because the question submitted by the trial court fairly placed the disputed issues before the jury, the trial court did not abuse its discretion in submitting the question.

B.     Jury Instructions

The appellants also contend that the trial court erred in including the following instructions in the jury charge in reference to the question previously discussed:

To determine the land included in an ambiguous boundary description in a deed, consider all facts and circumstances to determine the intention of the parties to the deed.

The law presumes that a seller of land intended to include in the deed a strip or parcel of land if the strip or parcel of land: (1) is small in comparison to the land conveyed; (2) is adjacent to or surrounded by the land conveyed; (3) belonged to the seller at the time of the conveyance; and (4) was of no benefit or importance to the seller.[3]

The appellants contend the instructions were erroneous because the trial court did not narrow their application so that the jury considered the instructions only with regard to the conveyance to the Whites.

A jury instruction is proper if it might aid the jury in answering the questions presented to them or if the instruction has any support in the evidence. *Thota*, 366 S.W.3d at 687. "'An instruction is proper if it: (1) assists the jury; (2) accurately states the law; and (3) finds support in the pleadings and evidence.'" *Id.* (quoting *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855-56 (Tex. 2009)).

In this case, the appellants do not dispute that the instructions accurately state the law. In fact, the appellants included the same instructions in their proposed jury question. Nor do the appellants dispute that the instructions find support in the pleadings and evidence. The appellants pled and presented evidence that the Whites' deed was ambiguous and even moved for a directed verdict on the strip and gore doctrine which is contained in the second instruction. Accordingly, the instructions at issue would only be improper if the instructions did not assist the jury because

---

[3] This instruction contains the law regarding the "strip and gore doctrine" which is "a presumption that narrow strips of land that are small in size and value compared to the adjoining tract are conveyed with the larger, adjoining tract." *City of Austin v. Whittington*, 384 S.W.3d 766, 788 n.23 (Tex. 2012); *see also Naumann v. Lee*, No. 03-11-00066-CV, 2012 WL 1149290, at *4 (Tex. App.—Austin Apr. 5, 2012, pet. denied) (mem. op.) ("The strip and gore doctrine, based on a public policy of discouraging separate ownership of long narrow strips of land distinct from adjoining land, is a presumption that a deed conveys a small parcel of land omitted from the description of the land conveyed if the parcel (1) is small in comparison to the land conveyed, (2) is adjacent to or surrounded by the land conveyed, (3) belonged to the grantor at the time of the conveyance, and (4) was of no benefit or importance to the grantor.").

they were not narrowed to apply only to the conveyance to the Whites. We hold the instructions in this case assisted the jury by instructing them that they could apply the applicable law on ambiguity and the strip and gore doctrine to the evidence in resolving the disputed issues presented in the jury charge. Because the jury would be guided by the evidence in applying the instructions, the instructions assisted the jury even absent further narrowing by the trial court.

SUFFICIENCY OF THE EVIDENCE

In their second, eighth, and ninth issues, the appellants challenge the sufficiency of the evidence to support the jury's finding that the Turleys intended to convey the 0.21 acre tract to the Clouses.

A.      Standard of Review

In conducting a legal sufficiency review, we consider evidence in the light most favorable to the jury's findings and indulge every reasonable inference that would support them. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id*. at 827. In a factual sufficiency review, we consider and weigh all of the evidence and will "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). In conducting our reviews, we are mindful that the jury as the trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony, and that it is within the jury's exclusive province to resolve any conflicts in the evidence. *City of Keller*, 168 S.W.3d at 819.

B.      Discussion

At trial, the appellants relied heavily on a deed of trust that the Turleys signed that described the land they owned after the 1965 conveyance to the Clouses as the 55.67 acres they owned prior to the conveyance less the 16.9221 acres conveyed to the Clouses. Because the

evidence established that the northern boundary of the land conveyed to the Clouses was the fence line, the appellants contend the deed of trust conclusively established that the 0.21 acre tract was conveyed to the Whites. Even independent of the deed of trust, the appellants assert their ownership of the 0.21 acre tract is established by "simple math" when the acreage conveyed to the Clouses is subtracted from the 55.67 acre tract owned by the Turleys at the time of the conveyance. Alternatively, the appellants contend that the 0.21 acre tract was conveyed to the Whites pursuant to the strip and gore doctrine which is "a presumption that, when a grantor conveys land he owns adjacent to a narrow strip that thereby ceases to be of benefit or importance to [the grantor], [the grantor] also conveys the narrow strip." *Escondido Servs., LLC v. VKM Holdings, LP*, 321 S.W.3d 102, 106 (Tex. App.—Eastland 2010, no pet.); *see also City of Austin v. Whittington*, 384 S.W.3d at 788 n.23. "The presumption is intended to apply to relatively narrow strips of land that are small in size and value in comparison to the adjoining tract conveyed by the grantor." *Escondido Servs., LLC*, 321 S.W.3d at 106.

Appellants' argument fails to give any weight to the evidence that contradicts the evidence on which they seek to rely. First, the contract for sale relating to the conveyance to the Clouses stated that the conveyance was for all of the Turleys' land south of the Upper Cibolo Creek Road. Second, both surveyors testified that the Clouses' deed and the Whites' deed contained a discrepancy with regard to a corner call and, because the Clouses' deed was senior in time, the corner call in the Clouses' deed controlled. Both surveyors also testified that survey lines could not be drawn from that corner consistently with the calls in the Whites' deed to encompass the 0.21 acre tract. Third, although the deed of trust referred to the acreage retained by the Turleys after the conveyance to the Clouses as being the acreage they owned less the acreage conveyed, the jury heard testimony that this approach was a "sloppy" way of describing land, and was not the description used in the Whites' deed which is the actual instrument of conveyance. Fourth, if

the Turleys conveyed the 0.21 acre tract of land to the Clouses, the strip and gore doctrine would not apply or would be rebutted since the Turleys would not have owned the 0.21 acre tract of land on the date of the conveyance to the Whites. Fifth, Schwartz's 1996 survey establishes that the Whites' southern boundary was the centerline of the road. Although the appellants' attorney sought to discredit Schwartz's testimony with excerpts from his deposition, the jury is the sole judge of the credibility of the witnesses and the weight to be given to the testimony. Finally, Herbert Turley testified at trial that he intended to convey the property south of the road to the Clouses and the property north of the road to the Whites.

Given that the jury is the sole judge of the credibility of the witnesses and the weight to give their testimony, and further given that it is within the jury's exclusive province to resolve any conflicts in the evidence, *City of Keller*, 168 S.W.3d at 819, we hold that the evidence is legally and factually sufficient to support the jury's finding that the Turleys intended to convey the 0.21 acre tract of land to the Clouses.[4]

### ATTORNEY'S FEES

In their sixth and seventh issues, the appellants challenge the award of attorney's fees to the Clouses, asserting that the fees are not recoverable based on the claims alleged, the Clouses' failure to segregate the fees, and the insufficiency of the evidence to support the amount of the fees awarded. The Clouses respond that the fees are recoverable because the underlying suit was a boundary dispute. Based on our prior holding that the underlying suit was not a boundary

---

[4] Although two of the appellants' sufficiency issues raise "matter of law" challenges because they had the burden of proof at trial, we need not separately address the sufficiency of the evidence under that more burdensome standard. *See Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014) (setting forth both standards of review).

dispute, we agree with the appellants that the Clouses were not entitled to recover their attorney's fees.[5]

In view of our holding that the underlying suit was not a boundary dispute, the only claims alleged by the Clouses to support the recovery of attorney's fees are their claim to quiet title and their trespass to try title and declaratory judgment claims. The law is well-established that attorney's fees are not recoverable for a claim to quiet title. *See, e.g., Florey v. Estate of McConnell*, 212 S.W.3d 439, 448 (Tex. App.—Austin 2006, pet. denied); *Sani v. Powell*, 153 S.W.3d 736, 745 (Tex. App.—Dallas 2005, pet. denied); *Southwest Guar. Trust Co. v. Hardy Road 13.4 Joint Venture*, 981 S.W.2d 951, 957 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). The law is equally well-established that a declaratory judgment claim cannot be used to recover attorney's fees in a dispute governed by a trespass to try title claim for which attorney's fees are not recoverable. *Coinmatch Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 926 (Tex. 2013), *Meekins v. Wisnoski*, 404 S.W.3d 690, 701 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Basley v. Adoni Holdings, LLC*, 373 S.W.3d 577, 587 (Tex. App.—Texarkana 2012, no pet.). A trespass to try title claim is "'*the* method for determining title'" to property, and a party "'may not proceed alternatively under the Declaratory Judgments Act to recover their attorney's fees.'" *Coinmatch Corp.*, 417 S.W.3d at 926 (quoting *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004)). Because the Clouses were not entitled to recover attorney's fees, we reverse the portion of the trial court's judgment awarding those fees.

---

[5] The Clouses also contend that the appellants waived their complaint because the appellants also requested attorney's fees at trial. We must, however, examine the applicable law in determining whether the trial court erred in awarding the fees, and the appellants cannot waive our application of the law to the alleged error in the trial court's judgment. *Basley v. Adoni Holdings, LLC*, 373 S.W.3d 577, 588-89 (Tex. App.—Texarkana 2012, no pet.).

**TRESPASS**

In their final two issues, the appellants contend the evidence is insufficient to support: (1) the jury's finding that Scott Kehoe trespassed on the Clouses' property; and (2) the jury's award of $500 in damages.

The evidence at trial established that the Clouses replaced a portion of their fence adjacent to the 0.21 acre tract of land with a gate to provide them with access to the Upper Cibolo Creek Road. The evidence further established through testimony and photographs that Scott removed the gate and replaced it with barbed wire fencing. A few photographs were taken while Scott was in the process of removing the gate, and those photographs were admitted into evidence. After Scott's actions, the gate with the poles and concrete previously used to anchor the gate was located on the Clouses' property inside their fence line.

To recover damages for trespass to real property, the Clouses were required to prove: (1) they owned or had a lawful right to possess the real property; (2) Scott entered the Clouses' land and the entry was physical, intentional, and voluntary; and (3) Scott's trespass caused injury to the Clouses. *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied). Scott first contends he never entered onto the Clouses' property; however, the jury was entitled to infer from the location of the gate inside the fence after its removal that an entry had been made. Also, a trespass can occur by "causing or permitting a thing to cross the boundary of a property." *Vaughn v. Drennon*, 372 S.W.3d 726, 738 (Tex. App.—Tyler 2012, no pet.); *see also Ehler v. LVDVD, L.C.*, 319 S.W.3d 817, 823 (Tex. App.—El Paso 2010, no pet.). In this case, the jury saw photographs establishing that Scott caused the gate to cross the boundary of the Clouses' land. Accordingly, the evidence is sufficient to support the jury's finding that Scott trespassed on the Clouses' land.

Scott next contends the evidence did not support the jury's award of $500 in damages. Actual damages recoverable for a trespass claim include "the amount necessary to place the plaintiff in the position it would have been in but for the trespass." *Meriden Hotels, Inc. v. LHD Fin. P'ship I, L.P.*, 255 S.W.3d 807, 821 (Tex. App.—Dallas 2008, no pet.). "These damages include cost of restoration or repair of the land to its former condition." *Id.* In this case, although the jury could consider the amount of money that would be expended in reinstalling or restoring the gate, the record contains no evidence of the amount of money the Clouses spent on the gate or on its installation. In addition, the record contains no estimate of the amount the Clouses would be required to expend in restoring the gate to its former condition. Although the Clouses contend the amount of damages awarded by the jury was nominal, the Texas Supreme Court has recently asserted that the phrase "nominal damages" generally refers to an award of one dollar. *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 665 (Tex. 2009). The court further stated, "A few cases have awarded nominal damages of $10 and even $100, but nominal damages are supposed to be a 'trifling sum,' and $1,000 hardly falls in that category." *Id.* In view of the Texas Supreme Court's holding in *MBM Fin. Corp.*, we cannot uphold the jury's award of $500 in trespass damages as nominal damages,[6] and because there is no evidence to support an award of actual damages, we reverse the portion of the trial court's judgment awarding damages for the trespass claim.

## CONCLUSION

The portions of the trial court's judgment awarding attorney's fees and trespass damages to the Clouses are reversed, and judgment is rendered that the Clouses take nothing on their

---

[6] We also note that the trial court's judgment awarded the Clouses the $500 as "actual damages."

trespass claim and their request for attorney's fees. The remainder of the trial court's judgment is affirmed.

Sandee Bryan Marion, Chief Justice