

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-19-00443-CV

**ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY**,
Appellant

v.

Peter **REININGER**,
Appellee

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-CI-21617
Honorable Cynthia Marie Chapa, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Beth Watkins, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: November 25, 2020

AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART

Appellant Allstate Vehicle and Property Insurance Company appeals a judgment in favor of its insured, appellee Peter Reininger. We affirm the judgment in part, reverse and render judgment for Allstate in part, and remand this cause for a new trial on attorney's fees.

### BACKGROUND

Before 2015, Reininger's home was insured under a Liberty Mutual policy that covered cosmetic hail damage to his metal roof. When Reininger began looking for a new policy in 2015, he contacted Justin Losoya, an Allstate agent. Reininger told Losoya he wanted a policy that was

"apples to apples" with his Liberty Mutual policy, and Losoya stated Allstate could provide that. Reininger also asked Losoya, "[I]f I have any bad weather, hail or any type of hail and it damaged my roof, am I covered?" Losoya answered, "Yes, sir, Mr. Reininger, you are. You pay [a] 1 percent [deductible]." Losoya did not mention any exclusions on coverage for the roof, and Reininger did not make any further inquiries about exclusions.

Reininger agreed to purchase automobile and homeowners' policies from Allstate. On June 26, 2015, Losoya sent Reininger an email with the subject line "Allstate Insurance Policies." In the email, Losoya stated he had "attached a copy of both policies for your records." The attachments were titled "Reininger Peter_Auto Policy" and "Reininger Peter_Home Policy." The "Reininger Peter_Home Policy" attachment was a six-page document that contained a policy number and listed coverage amounts, deductibles, discounts to be applied to Reininger's policy, and information about Reininger's property. Other than specifying the monetary limits of the coverage, it did not identify any coverage exclusions. However, it stated, "Any insurance bound hereunder shall otherwise be subject in all respects to the terms and conditions of the regular policy forms of the Company at present in use and to the statements in this application." It also contained a "Binder Provision" providing that Allstate, "[i]n reliance on the statements in this application and subject to the terms and conditions of the policy authorized for [Allstate's] issuance to the applicant, binds the insurance applied for[.]" Allstate internally refers to a document like this one as a "binder."

Reininger believed the "Reininger Peter_Home Policy" attachment was his homeowners' insurance policy, and he paid his premium after he reviewed that document. After Reininger paid his premium, Allstate created the policy. In contrast to the six-page binder, the policy was a document of approximately sixty pages. Unlike the Liberty Mutual policy, the Allstate policy contained a "metal roof surfaces cosmetic damage exclusion endorsement" providing the policy

did not cover "[c]osmetic damage caused by hail to a metal roof surface, including but not limited to, indentations, dents, distortions, scratches, or marks, that change the appearance of a metal roof surface." The policy also explained, "We will not apply this exclusion to sudden and accidental direct physical damage to a metal roof surface caused by hail that results in water leaking through the metal roof surface." Both Reininger and his wife, Nancy, contend the only homeowners' policy document they ever received from Allstate was the six-page binder.

On April 12, 2016, a hailstorm struck Reininger's home. After the storm, Reininger reported to Losoya that the roof and other parts of his home had been damaged, and Allstate opened a claim. On May 2, 2016, a claims adjustor, Kevin Phillips, inspected Reininger's property on Allstate's behalf.[1] Reininger reported to Phillips that there was no interior damage, and Phillips did not inspect the home's interior. After surveying the roof, Phillips told Reininger the storm had caused only cosmetic damage that was not covered by the policy. Both Reininger and Nancy testified that this was the first time they learned about the cosmetic damage exclusion, and both testified that they would not have purchased the policy if they had known about that exclusion.

Shortly after Phillips's inspection, Reininger and Nancy noticed water leaks inside their home. Because they had not experienced any interior leaks before the hailstorm, they requested a further inspection of their roof, and Allstate scheduled a second inspection with a different claims adjustor. However, Reininger cancelled it after the second adjustor told him, without first inspecting the property, that "he didn't think he was going to find anything worse than Mr. Phillips did." Although Allstate's claim file indicated Reininger had stated he wanted to reschedule the second inspection, Allstate closed the file two days later.

---

[1] While Phillips is not an Allstate employee, Allstate does not dispute that it would be liable for his wrongful actions, if any.

Reininger sued Allstate and Phillips for breach of contract, fraud, and violations of the Texas Insurance Code and the Deceptive Trade Practices Act. He claimed, inter alia, that Allstate had misrepresented the terms of his policy, both before he purchased it and during the adjustment of his hail damage claim; denied his claim without performing a reasonable inspection of his roof; and refused to pay his claim after liability became reasonably clear. After an eight-day trial, the jury found in Reininger's favor on his breach of contract, fraud, and statutory claims against Allstate.[2] It also found Allstate had knowingly engaged in unfair or deceptive acts or practices and assessed additional damages as a result of that finding. Finally, the jury awarded Reininger attorney's fees. Reininger elected to recover on his statutory claims, and the trial court signed a judgment consistent with the jury's verdict on Reininger's claims under the Insurance Code, including its finding that Allstate had acted knowingly.

Allstate filed a motion for judgment notwithstanding the verdict and alternative motion for new trial. Both motions were denied by operation of law. Allstate appealed.

## ANALYSIS

### *Legal and Factual Sufficiency of Liability Findings*

In its fourth issue, Allstate contends the evidence is legally and factually insufficient to support the jury's liability findings on Reininger's Insurance Code claims. Because Allstate's legal sufficiency complaint would, if meritorious, require rendition of judgment in Allstate's favor, we will consider this issue first. *See Maynard v. Booth*, 421 S.W.3d 182, 183 (Tex. App.—San Antonio 2013, pet. denied).

---

[2] Reininger nonsuited his claims against Phillips during the trial.

*Standard of Review and Applicable Law*

When an appellant challenges the legal sufficiency of the evidence supporting an adverse finding on which it did not have the burden of proof, it must show that no evidence supports the challenged finding. *In re Estate of Matthews*, 510 S.W.3d 106, 117 (Tex. App.—San Antonio 2016, pet. denied). We review the evidence in the light most favorable to the verdict, crediting evidence favorable to the verdict if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *Id.* Evidence is legally sufficient if it would allow reasonable people to reach the verdict under review. *Id.*

When a party challenges the factual sufficiency of a finding on which it did not have the burden of proof, it must show the evidence is insufficient to support the finding. *Id.* In a factual sufficiency challenge, we review all of the evidence but may not reverse the judgment unless the evidence that supports the jury's verdict is so weak as to make the challenged findings clearly wrong and manifestly unjust. *Id.*

In reviewing both legal and factual sufficiency challenges, we are mindful that the jury has the sole authority to resolve conflicts in the evidence, determine the credibility of the witnesses, and decide the weight to be given to each witness's testimony. *United Parcel Serv., Inc. v. Rankin*, 468 S.W.3d 609, 615 (Tex. App.—San Antonio 2015, pet. denied). We may not substitute our own judgment for the jury's, even if the evidence would clearly support a different result. *Id.*

*Application*

The court's charge on Reininger's Insurance Code claims asked the jury whether Allstate "engage[d] in any unfair or deceptive act or practice that caused damages to Peter Reininger." The unfair or deceptive acts the jury considered were whether Allstate: (1) refused to pay Reininger's claim without conducting a reasonable investigation; (2) misrepresented a material fact or policy provision related to the coverage at issue; (3) failed to attempt in good faith to effectuate a prompt,

fair, and equitable settlement of the claim when Allstate's liability had become reasonably clear; (4) failed to promptly provide a reasonable explanation of the factual and legal basis for denying the claim; or (5) failed to affirm or deny coverage within a reasonable time. *See* TEX. INS. CODE ANN. § 541.060.

### 1. Unfair or deceptive act or practice

Reininger testified he disagreed with Phillips's conclusion that the hail damage to the roof was merely cosmetic. He also testified that he voiced this disagreement to Phillips on the day of the inspection. The undisputed evidence showed that if an insured disagrees with an adjustor's finding of cosmetic damage, Allstate's policies require the adjustor to request a report from a structural engineer. *See State Farm Cas. Co. v. Simmons*, 963 S.W.2d 42, 45 (Tex. 1998) (insurance company's internal documents can support finding that its investigation of a claim was deficient). It is further undisputed that Phillips did not request a report from a structural engineer despite Reininger's disagreement with the finding of only cosmetic damage. *See id.* This evidence supports a finding that Allstate was required to, but did not, request a report from a structural engineer regarding Reininger's hail damage claim before denying the claim. While Phillips testified Reininger never told him he disagreed with the cosmetic damage conclusion, the jury was free to disbelieve that testimony. *See LaSalle Pipeline L.P. v. Donnell Lands, L.P.*, 336 S.W.3d 306, 319 (Tex. App.—San Antonio 2010, pet. denied).

Additionally, Reininger's claims adjusting expert, Earl Stigler, testified that it is unreasonable for an adjustor investigating hail damage to a roof not to inspect inside a home, even if the homeowner says it is not necessary. He explained, "Many times homeowners do not see [interior damage]. Many times they do not know where to look." He testified that a reasonable adjustor would ask to look inside and, if the homeowner refused to allow entry, "would document that they declined my inspection." It is undisputed that Phillips did not inspect the interior of

Reininger's home. Phillips testified that he did not do so because Reininger reported that there was no interior damage. However, Reininger testified that he never told Phillips he could not come in the house and that he would have allowed an inspection of the interior if Phillips had asked to perform one. The jury was free to believe Reininger's testimony over Phillips's. *See id.* This evidence supports a finding that Phillips should have inspected the interior of Reininger's home, but did not do so.

Based on this evidence, a reasonable factfinder could conclude Allstate refused to pay Reininger's claim without conducting a reasonable investigation. *See In re Estate of Matthews*, 510 S.W.3d at 117. We cannot conclude that the jury's finding that Allstate engaged in those acts is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. *See id.* As a result, the evidence is legally and factually sufficient to support the jury's finding that Allstate engaged in an unfair or deceptive act or practice. *See id.*; *see also* TEX. INS. CODE § 541.060.

*2. Producing cause*

Allstate argues its actions cannot be a producing cause of Reininger's damages because the evidence conclusively shows the cosmetic damage exclusion bars Reininger from recovering benefits under the policy. It therefore contends it cannot be liable for Reininger's Insurance Code claims because it merely denied a claim that was not covered. *See Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995).

We agree that in general, an insurer does not violate the Insurance Code by denying a claim that is not covered by the policy. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 496 (Tex. 2018); *but see id.* at 500–01 (recognizing an insured might, under "extreme" circumstances, be entitled to damages based on "an injury independent of a right to benefits"). However, we disagree that the evidence conclusively shows Reininger's claim was not covered. Like all

contracts, an insurance policy must be interpreted according to its plain language and without the insertion of language or provisions the parties did not include in their agreement. *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892–93 (Tex. 2017). Here, the exclusion provides that the policy does not cover cosmetic hail damage, "including but not limited to, indentations, dents, distortions, scratches, or marks, that change *the appearance of* a metal roof surface" (emphasis added). The exception to that exclusion provides that the exclusion does not apply "to sudden and accidental direct physical damage . . . caused by hail that results in water leaking through the metal roof surface." This language provides only that the policy does not cover hail damage that merely "change[s] the appearance of a metal roof surface." Nothing in the plain language of either the exclusion or its exception indicates that the policy *only* covers hail damage that creates a hole in the roof on impact, and Allstate's assertion to the contrary inserts language into the contract that the parties did not use. *See id.* ("A contract's plain language controls, not what one side or the other alleges they intended to say but did not.") (internal quotation marks omitted). As a result, we reject Allstate's assertion that the terms of the policy required Reininger to present evidence that the hailstorm created an immediate opening in the roof.

Stigler testified that the damage he observed on Reininger's roof was structural, not cosmetic. He opined that the dents, indentations, and marks Phillips concluded were not covered by the policy "exceed[ed] cosmetic damage" because they reduced the roof's ability to shed water and therefore diminished its useful life. He also explained to the jury that when hail hits the seams of a metal roof, "you've got this flat surface on top trying to seal against something that's not flat and you've got these gaps. And that's where the water came out." He showed the jury an "end seam that's . . . been bent over by hail," and testified, "That's structural damage. That's not cosmetic. . . . That seam has been compromised and it's going to leak." Stigler also identified hail damage to a ridge cap on Reininger's roof to show that "the [roof] system has failed," as well as

several roof seams that had been compromised by hail and were no longer watertight. Stigler's testimony is consistent with evidence showing that because of the hail damage to the roof, Reininger has not been able to find another insurance company that is willing to write a policy on his home.

Allstate argues that even if the roof damage is structural, it is insufficient to support the jury's liability and damages findings because Reininger did not segregate his recoverable damages from his unrecoverable damages. This argument seems to assume that Reininger did not sufficiently tie his home's interior water damage to the hail damage to the roof. Again, we disagree. Both Reininger and Nancy testified that in the fourteen years they had lived in their home, they never saw any water leaks until the first large rain event after the 2016 hailstorm. Additionally, Stigler showed the jury "probable points of water intrusion" into Reininger's home that he attributed to the 2016 hail damage and which he testified were directly above the locations of the interior leaks. He also testified that the water damage he observed inside Reininger's home was consistent with a "failing" metal roofing system. While Allstate's expert witnesses testified the water intrusion into Reininger's home was due to non-covered perils like normal wear-and-tear and lack of maintenance, Stigler testified that the interior damage he observed in Reininger's home was more consistent with "a recent event" than a wear-and-tear issue. Moreover, the jury was free to conclude Allstate's experts' conclusions were not credible, especially in light of Nancy's and Reininger's testimony that the leaks did not appear until after the hailstorm. *See Bay Rock Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 298 S.W.3d 216, 229–30 (Tex. App.—San Antonio 2009, pet. denied).

Allstate also argues Stigler's testimony was conclusory and therefore constitutes no evidence. An expert's opinion is conclusory "if no basis for the opinion is offered, or the basis offered provides no support." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009).

Stigler testified that his investigation of the roof was consistent with industry standards, and noted that the damage he observed on Reininger's roof was consistent with both the reported size of the hailstones from the 2016 hailstorm and with damage from similar hailstorms he had seen during his 36 years as an adjustor. He explained how a metal roof is constructed and why hail damage to the seams of a metal roof compromises its ability to prevent water intrusion, and he identified several examples of that kind of damage on Reininger's roof. With regard to the interior damage in Reininger's home, he explained why the pattern of the water stains he observed showed that the damage was not due to wear-and-tear, including why those stains and the water intrusion that caused them could not be attributed to pre-hailstorm spots of rust on Reininger's roof. Because Stigler described the facts upon which he relied and explained his reasoning process in examining those facts, his opinions were not conclusory. *Gulley v. State Farm Lloyds*, 461 S.W.3d 563, 571–72 (Tex. App.—San Antonio 2014, pet. denied).

Based on this evidence, a reasonable factfinder could have found that Allstate's unreasonable investigation caused it to wrongfully deny a valid claim and therefore caused damage to Reininger.[3] *See Menchaca*, 545 S.W.3d at 496–97; *see also In re Estate of Matthews*, 510 S.W.3d at 117. Moreover, the evidence on this point was not so weak as to make the jury's finding in Reininger's favor manifestly wrong and unjust. *See In re Estate of Matthews*, 510 S.W.3d at 117.

### 3. Bona fide coverage dispute

Allstate contends, however, it cannot be liable for Reininger's statutory claims because the evidence shows only a bona fide coverage dispute. "Evidence that shows only a bona fide coverage

---

[3] Allstate frames the causation analysis as requiring evidence of "producing cause." However, the court's charge simply asked the jury to consider whether Allstate's unfair or deceptive acts "caused damages to Peter Reininger" without defining any specific causation standard. Because Allstate did not object to the charge on this basis, we must review the evidence in light of the question as submitted. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000).

dispute does not, standing alone, demonstrate bad faith. Nor is bad faith established if the evidence shows the insurer was merely incorrect about the factual basis for its denial of the claim, or about the proper construction of the policy." *Southland Lloyds Ins. Co. v. Cantu*, 399 S.W.3d 558, 569 (Tex. App.—San Antonio 2011, pet. denied) (internal quotation marks and citations omitted). However, whether an insurer acted in bad faith is a fact issue for the jury and "'focuses not on whether the claim was valid but on the reasonableness of the insurer's conduct' in handling the claim." *Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 248 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.) (quoting *Lyons v. Miller Cas. Ins. Co.*, 866 S.W.2d 597, 601 (Tex. 1993)). One of our sister courts recently held that even if a bona fide coverage dispute exists, that dispute does not excuse an insurer's failure to conduct a reasonable investigation of a claim. *Certain Underwriters at Lloyd's, London v. Prime Nat. Res., Inc.*, No. 01-17-00881-CV, 2019 WL 7044667, at *17 (Tex. App.—Houston [1st Dist.] Nov. 26, 2019, no pet.).

Here, we have already held that the evidence supports a finding that Phillips was required to—but did not—request a report from a structural engineer before denying Reininger's claim. *See id.* Reininger also presented evidence that a second Allstate adjustor told Reininger that "he didn't think he was going to find anything worse than Mr. Phillips did," even though that adjustor had not yet inspected the property. Finally, that the evidence showed Allstate closed the file on Reininger's claim two days after he cancelled the second inspection, even though the file indicated he had told Allstate he wanted to reschedule it. Because the cosmetic damage investigation was still pending, Stigler testified it was unreasonable for Allstate to have closed the file before Reininger either: (1) affirmatively indicated he wanted to abandon his claim; or (2) failed to respond to Allstate's scheduling inquiries for at least 90 days. On this point, Stigler told the jury, "[W]e're the adjustors. We're the professionals. We're the ones that are supposed to make sure we take care of everything."

As an appellate court, we are prohibited from reweighing the evidence or substituting our opinion for the jury's, even if the evidence would clearly support a different result. *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 450 (Tex. 1997); *Rankin*, 468 S.W.3d at 615. The evidence here, when considered in the light most favorable to the verdict, would allow a reasonable factfinder to conclude that Allstate's denial and closure of Reininger's claim without further investigation was unreasonable. *See Simmons*, 963 S.W.2d at 45; *Nicolau*, 951 S.W.2d at 450. Additionally, this evidence is not so weak as to make a finding in Reininger's favor manifestly unjust. *In re Estate of Matthews*, 510 S.W.3d at 117. As a result, we reject Allstate's contention that this case presents only a bona fide coverage dispute.

*4. Conclusion*

For these reasons, the evidence is legally and factually sufficient to support the jury's finding that Allstate committed unfair or deceptive acts that caused damages to Reininger. We therefore overrule Allstate's fourth issue.[4]

### *Submission of Cosmetic Damage Exclusion*

In its first issue, Allstate challenges the trial court's submission of Question 1, which asked the jury to determine whether Allstate and Reininger agreed to include a cosmetic damage exclusion in Reininger's policy. In its second issue, it complains the trial court erred by refusing to submit Allstate's proposed question and instruction on whether the cosmetic damage exclusion applied to Reininger's claim. In its third issue, it argues the trial court abused its discretion by submitting Question 2 of the charge, which asked the jury to determine whether the damage to

---

[4] Allstate's fourth issue includes a sub-issue arguing the trial court abused its discretion by submitting Reininger's statutory claims to the jury. Because we have held the evidence was sufficient to support the jury's findings on those claims, we reject Allstate's challenge to the submission of those issues. *See* TEX. R. CIV. P. 278 ("The court shall submit the questions, instructions and definitions . . . which are raised by the written pleadings and the evidence.").

Reininger's roof was cosmetic, but only if it had already determined the policy excluded cosmetic damage.

*Standard of Review and Applicable Law*

We review a trial court's submission of jury questions and instructions for abuse of discretion. *Bexar Cty. Appraisal Dist. v. Abdo*, 399 S.W.3d 248, 257–58 (Tex. App.—San Antonio 2012, no pet.). While a trial court has broad discretion in submitting questions to a jury, it must ensure that its charge submits disputed, controlling issues of fact to the jury. *Id.* at 258. However, to preserve a claim of charge error for our review, the complaining party must plainly and timely make the trial court aware of the complaint and obtain a ruling. TEX. R. APP. P. 33.1; *In re B.L.D.*, 113 S.W.3d 340, 349–50 (Tex. 2003). Furthermore, we may not reverse based on charge error unless the error probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1; *Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753, 757 (Tex. 2006). To determine whether an error probably caused the rendition of an improper judgment, we examine the entire record. *Urista*, 211 S.W.3d at 757. A jury finding that does not result in an adverse judgment against the appellant is generally harmless, even if the issue was submitted erroneously. *See, e.g.*, *Marinecorp Int'l, Ltd. v. Chopper Grp., LLC*, No. 01-14-00707-CV, 2016 WL 1382168, at *8 (Tex. App.—Houston [1st Dist.] Apr. 7, 2016, pet. denied) (mem. op.); *GuideOne Lloyds Ins. Co. v. First Baptist Church of Bedford*, 268 S.W.3d 822, 839 (Tex. App.—Fort Worth 2008, no pet.).

*Application*

Reininger notes—and Allstate does not dispute—that Questions 1 and 2 represent the jury's findings on Reininger's breach of contract claim and that Allstate's proposed question also goes to the breach of contract claim. Because Reininger elected to recover on his Insurance Code claims rather than his common-law breach of contract claim, the jury's breach of contract findings are not reflected in the final judgment. Because the jury's breach of contract findings did not result

in a judgment against Allstate, we cannot say any error in the submission of those issues directly led to the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1; *Marinecorp Int'l*, 2016 WL 1382168, at *8.

Allstate argues that while the challenged portions of the jury charge are not directly reflected in the judgment, it was nevertheless harmed by the submission of those issues because the cosmetic damage exclusion "was central to [its] defense." It claims the court's charge as submitted confused and misled the jury about how to resolve all of Reininger's claims, including the claims that form the basis of the judgment. It expands on this argument in its reply brief, contending that the jury's findings on Reininger's Insurance Code claims "are intertwined with" its finding that the cosmetic damage exclusion was not part of the policy. Allstate claims the submission of these issues was therefore harmful because those issues implicate a critical, contested issue: Allstate's defense that the cosmetic damage exclusion precluded recovery for Reininger on any of his claims. *See Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012).

While Allstate frames this issue as a harm analysis, we conclude it rests in an objection to the submission of these issues. As a result, Allstate's complaint on this issue is not preserved for our review unless it raised that objection in the trial court "specifically enough to support the conclusion that [the] trial court was fully cognizant of the ground of complaint and deliberately chose to overrule it." *Hamid v. Lexus*, 369 S.W.3d 291, 296 (Tex. App.—Houston [1st Dist.] 2011, no pet.). It was also required to raise that objection before the court read the charge to the jury. TEX. R. CIV. P. 272; *Cont'l Cas. Co. v. Baker*, 355 S.W.3d 375, 383 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The first time Allstate specifically argued that the submission of the cosmetic damage exclusion was the keystone of its entire defense was in its post-judgment motion, long after the charge was read to the jury. The only objections Allstate timely asserted to Question 1 were: (1) it was conclusively negated by the evidence; and (2) one of its instructions constituted

an improper comment on the weight of the evidence. Because the arguments Allstate timely raised in the trial court do not comport with the argument it raises here, it waived its complaint that the submission of Question 1 confused or misled the jury. *See* TEX. R. CIV. P. 272; *Baker*, 355 S.W.3d at 383.

We hold Allstate also waived this complaint about the trial court's submission of Question 2 and its refusal to submit Allstate's competing proposed question. Both Question 2 and Allstate's proposed question asked the jury to consider whether the cosmetic damage exclusion applied. Allstate described its proposed question to the trial court as "our counter-proposal to [Question] No. 2." Because both questions involved the same issue, the trial court asked Allstate to explain how they differed. In response, Allstate argued: (1) its proposed question used the applicable language from the policy and Question 2 did not; (2) Allstate's proposed question asked the jury to consider the cosmetic damage exclusion unconditionally, while Question 2 instructed the jury not to consider the exclusion unless it had already found the parties agreed to include it in the policy; and (3) Question 2 constituted an improper comment on the weight of the evidence. However, Allstate did not argue, as it does on appeal, that Question 2's conditional submission of the cosmetic damage exclusion could potentially mislead or confuse the jury during its consideration of Reininger's non-contract claims. Because Allstate did not timely assert that argument in the trial court, it waived it. *See* TEX. R. CIV. P. 272; *Baker*, 355 S.W.3d at 383.

We conclude Allstate has not properly preserved its complaints about the submission of Questions 1 and 2 or the trial court's refusal to submit its proposed question. TEX. R. APP. P. 44.1; TEX. R. CIV. P. 272; *Baker*, 355 S.W.3d at 383. We therefore overrule its first three issues.

### *Whether Allstate "Knowingly" Violated the Insurance Code*

In its fifth issue, Allstate argues the evidence is legally and factually insufficient to support the jury's finding that it knowingly violated the Insurance Code.

*Standard of Review and Applicable Law*

The Insurance Code permits a plaintiff who successfully asserts a claim that an insurer committed an unfair or deceptive act or practice to recover treble damages if he shows "the defendant knowingly committed the act complained of." TEX. INS. CODE ANN. § 541.152(b). An insurer acts "knowingly" if it has "actual awareness of the falsity, unfairness, or deceptiveness of the act or practice on which" the claim for damages is based. TEX. INS. CODE ANN. § 541.002(a). "Actual awareness may be inferred if objective manifestations indicate that a person acted with actual awareness." *Id.*

To demonstrate the evidence is legally insufficient to support the jury's finding that it acted knowingly, Allstate must show that no evidence supports that finding. *In re Estate of Matthews*, 510 S.W.3d at 117. To show the evidence is factually insufficient, it must show the evidence is so weak as to make the finding clearly wrong and unjust. *Id.*

*Application*

Allstate argues there is no evidence to support the jury's finding that it knowingly violated the Insurance Code. In response, Reininger points to evidence showing Allstate: (1) falsely represented that his Allstate policy would be "apples to apples" with his Liberty Mutual policy; (2) did not explain the distinction between the binder and the full policy; and (3) slipped the cosmetic damage exclusion into his policy without his knowledge.

We agree with Allstate. As explained above, the evidence supports a finding that certain actions Allstate took during its handling of Reininger's claim were unreasonable. However, evidence that a party acted unreasonably, without more, is not sufficient to show that it acted knowingly. *See* TEX. INS. CODE § 541.002(a). Even when viewing the record in the light most favorable to the jury's verdict, we see nothing to indicate Allstate had "actual awareness of the

falsity, unfairness, or deceptiveness of the" specific unreasonable settlement acts upon which we affirmed the jury's underlying finding of liability. *See id.*

The acts Reininger points to in his brief as evidence of knowing conduct also do not support the jury's finding that Allstate knowingly engaged in unfair or deceptive acts. Assuming, without deciding, that the "apples to apples" representation constituted a violation of the Insurance Code, there is no evidence that it rose to the level of a knowing violation. *See id.* The evidence shows Reininger told Losoya he wanted his Allstate policy to be the same as his Liberty Mutual policy—which did not include a cosmetic damage exclusion—and that Losoya stated Allstate could satisfy that request. However, it is undisputed that Reininger neither showed his Liberty Mutual policy to Losoya nor specifically told him that the policy did not include a cosmetic damage exclusion. Because there is no evidence that Losoya knew the Liberty Mutual policy did not contain the cosmetic damage exclusion, his failure to note that distinction between the two policies does not support a finding that he had actual awareness of any falsity, unfairness, or deception in his statements. *See id.*

The evidence also shows Reininger asked Losoya if his roof would be covered for hail damage under an Allstate policy and Losoya responded, "Yes, sir, Mr. Reininger, you are. You pay [a] 1 percent [deductible]." Reininger also points to evidence showing "it is important" for Allstate agents "to warn customers about the cosmetic damage exclusion." However, even if we assume Losoya's failure to mention the cosmetic damage exclusion in response to Reininger's question constituted a violation of the Insurance Code, we have found no evidence to support a finding that Losoya acted with actual awareness of the falsity, unfairness, or deceptiveness of his actions. *See id.* At most, the evidence shows Losoya behaved carelessly or unreasonably, which is not sufficient to support an award of additional statutory damages under the Insurance Code. *See id.*

There is also no evidence to support a finding that Allstate "slipped" the cosmetic damage exclusion into Reininger's policy with actual awareness of any falsity, unfairness, or deceptiveness. *See id.* While Reininger's brief points to Texas Department of Insurance ("TDI") complaints asserting similar claims against Allstate as support for the jury's finding that it acted knowingly in this case, Reininger relied on those complaints for impeachment only—those complaints were not admitted into evidence and are not included in the appellate record. In addition, Reininger did not present any evidence showing the TDI found those complaints were meritorious or otherwise resolved them against Allstate. In this novel situation, we decline to hold that allegations in a non-party's administrative complaint in a different dispute constitute competent evidence that Allstate knowingly deceived Reininger in this case.

Finally, witness testimony established that Allstate and its agents internally distinguish between a "binder" and a full "policy" because a policy contains more detailed information that is not explained in a binder. The evidence further shows that in an email to Reininger, Losoya used the word "policy" three times to describe the document the parties now agree is merely the binder. The binder itself, however, indicated the policy was subject to "the terms and conditions of the regular policy forms of [Allstate] at present in use." As a result, even if Losoya's failure to distinguish between a policy and a binder violated the Insurance Code, there is no evidence to support a finding that this failure was a knowing act of falsity, unfairness, or deception. *See* TEX. INS. CODE § 541.002(a).

For these reasons, we sustain Allstate's fifth issue and reverse the portion of the trial court's judgment awarding $135,765.54 in additional statutory damages to Reininger under section 541.152(b) of the Insurance Code. Because our reversal of this portion of the judgment substantially reduces the amount of damages awarded to Reininger, we also reverse the award of

attorney's fees to Reininger and remand this cause for a new trial on attorney's fees. *See Barker v. Eckman*, 213 S.W.3d 306, 315 (Tex. 2006).

### *Evidentiary Issues*

In its sixth issue, Allstate contends it was harmed by the trial court's admission of irrelevant and/or unduly prejudicial evidence.

### *Standard of Review and Applicable Law*

We review the trial court's evidentiary rulings for abuse of discretion. *Rankin*, 468 S.W.3d at 624. A trial court does not abuse its discretion unless its decision is arbitrary, unreasonable, or made without reference to guiding rules or principles. *In re Estate of Denman*, 362 S.W.3d 134, 140–41 (Tex. App.—San Antonio 2011, no pet.). We will uphold a trial court's evidentiary ruling if there is any legitimate basis for it. *Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112, 119–20 (Tex. 1999). "Errors in admission or exclusion of evidence are generally not reversible unless the appellant can show the whole case turns on the complained of evidence." *In re Estate of Denman*, 362 S.W.3d at 141.

### *Application*

Allstate argues the trial court abused its discretion by admitting the testimony of two of Reininger's neighbors, Valerie Meade and Lonnie Blanchard. Allstate also contends the trial court abused its discretion by allowing Reininger to impeach its corporate representative with complaints other insureds filed against Allstate with the TDI.

### 1. *Neighbors' testimony*

Both Meade and Blanchard testified that they live on the same street as Reininger, saw large hail at their homes on the night of the hailstorm, and replaced their metal roofs after the hailstorm. Allstate argues this testimony constituted improper, harmful evidence of "the way neighbors' claims were handled, even though those claims involved other homes, policies, and

insurers." We note, however, that Allstate agreed to admit into evidence an email from Reininger to Losoya stating that multiple homes on Reininger's street had either had their metal roofs replaced or were scheduled for replacement. Additionally, Reininger testified "[a]ll but three" of the twenty-five metal roofs on his street were replaced after the hailstorm, and Allstate has not challenged this testimony on appeal. Because Meade's and Blanchard's testimony about the replacement of their roofs is cumulative of other unchallenged, substantially similar evidence, Allstate has not shown it was harmed by any error in admitting that testimony. *See Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004); *Grove v. Overby*, No. 03-03-00700-CV, 2004 WL 1686326, at *3 (Tex. App.—Austin July 29, 2004, no pet.) (mem. op.). We therefore overrule Allstate's contention that the trial court committed reversible error by admitting Meade's and Blanchard's testimony. *See Drilex*, 1 S.W.3d at 119–20.

### 2. TDI complaints

Allstate argues the trial court abused its discretion by allowing Reininger to impeach Allstate's corporate representative, Stephan Tendorf, with previous complaints filed against Allstate with the TDI, as well as Allstate's responses to those complaints.[5] However, the only harm Allstate identifies from Reininger's use of the TDI matters is: (1) it may have influenced the jury's finding that Allstate knowingly engaged in false, unfair, or deceptive acts; and (2) it was "unduly prejudicial." As Reininger notes, Allstate did not object to the TDI matters on the basis that the material's probative value was outweighed by its prejudicial effect. As a result, it waived that objection. TEX. R. APP. P. 33.1; *Garza v. Garza*, 217 S.W.3d 538, 555 (Tex. App.—San Antonio 2006, no pet.). Moreover, to the extent the jury relied on the TDI matters to reach its finding that

---

[5] Again, neither the TDI complaints nor Allstate's responses were admitted into evidence. Moreover, although the record indicates those documents were displayed for the jury as a demonstrative, they were not included in the appellate record.

Allstate acted knowingly, we have already remedied that harm, if any, by reversing the portion of the trial court's judgment that is based on that finding. Because Allstate has not shown the case as a whole turns on any error related to the TDI matters, we decline to reverse the rest of the judgment on that basis. *See In re Estate of Denman*, 362 S.W.3d at 141.

For these reasons, we overrule Allstate's contention that the trial court committed reversible error by allowing Reininger to impeach Tendorf with the TDI documents.

### *Cumulative Error Doctrine*

In its final issue, Allstate argues the cumulative effect of the trial court's alleged errors requires reversal. The cumulative error doctrine allows an appellate court to reverse a judgment if the trial court committed numerous errors that individually do not support reversal but "taken together may do so." *Rhey v. Redic*, 408 S.W.3d 440, 462 (Tex. App.—El Paso 2013, no pet.). Reversal on this basis is not appropriate unless the record as a whole demonstrates that "but for the alleged errors, the jury would have rendered a verdict favorable to [the appellant]." *Pitman v. Lightfoot*, 937 S.W.2d 496, 537 (Tex. App.—San Antonio 1996, writ denied). After reviewing the entire record in this case, we conclude there is no cumulative error that supports a wholesale reversal of the trial court's judgment. *See Crescendo Invs., Inc. v. Brice*, 61 S.W.3d 465, 481 (Tex. App.—San Antonio 2001, pet. denied).

### CONCLUSION

We affirm the portion of the trial court's judgment awarding actual damages to Reininger under the Texas Insurance Code. We reverse the portion of the trial court's judgment awarding additional statutory damages based on the jury's finding that Allstate acted knowingly, and we render judgment for Allstate on that issue. Finally, in light of our reversal of the additional statutory

damages award, we reverse the trial court's award of attorney's fees to Reininger and remand this matter for a new trial on attorney's fees.

Beth Watkins, Justice